UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MACKLIN KELLER,

  *Plaintiff*,

v.    Case No.  SA-21-CV-00205-JKP

STATE FARM LLOYDS,

  *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant State Farm Lloyds's Motion for Partial Summary Judgment and the responsive filings. *ECF Nos. 22,23,24*. Upon consideration, the Court concludes the Motion shall be **GRANTED**.

### Procedural Background

Macklin Keller held a property insurance contract with State Farm Lloyd's (State Farm) covering a rental property. This case arises from Keller's claim for coverage benefits under this insurance contract due to damage to Keller's property caused by a hailstorm in May 2020. Based upon allegations that State Farm improperly failed to satisfy the insurance coverage claim, Keller asserted causes of action for violation of the Texas Insurance Code §541 for unfair competition and unfair practices, violation of the Prompt Payment Act in Texas Insurance Code §542, breach of contract, violation of the Texas Deceptive Trade Practices Act, and breach of good faith and fair dealing. *ECF No. 1*. State Farm filed this Motion for Partial Summary Judgment on the causes of action of violation of the Texas Insurance Code §541 for unfair competition and unfair

practices, violation of the Texas Deceptive Trade Practices Act, and breach of good faith and fair dealing. *ECF No. 22*.

## Legal Standard

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evi-

3

dence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

## Discussion

1. **Breach of Good Faith and Fair Dealing ("Bad Faith")[2]**

An insurer holds a duty to deal fairly and in good faith with its insureds. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); *Bates v. Jackson Nat'l. Life Ins. Co.*, 927 F. Supp. 1015, 1021 (S.D. Tex. 1996). An insurer breaches this duty and will be liable if it "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50-51 (Tex. 1997); *United States Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex. 1997). Consequently, under this reasonably-clear standard for determination of liability, "an insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex. 1998); *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997); *see also Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 537 (S.D. Tex. 1999).

"As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). This determination of bad faith does not focus on whether the insured's coverage claim was valid, but, instead, on the reasonableness of the insurer's conduct in rejecting the claim. *Id*. Facts and evidence that show only a *bona fide* coverage dispute do not rise to the level

---

[2] Typically, a cause of action asserting breach of good faith and fair dealing is referred to colloquially as a "bad faith claim."

of bad faith to impose liability. *Simmons,* 963 S.W.2d at 43; *Williams,* 955 S.W.2d at 268; *Nicolau,* 951 S.W.2d at 448; *Douglas*, 37 F. Supp. 2d at 537.

Similarly, an insurer is obligated to adequately investigate a claim before denying it. *Giles*, 950 S.W.2d at 56 n.5. "An insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear. Instead, we reaffirm that an insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Id*. "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *Simmons*, 963 S.W.2d at 44–45. If an insurer fails to conduct a reasonable investigation, it cannot assert that a bona fide coverage dispute exists. *Id*. An insurer fails to reasonably investigate a claim if the investigation is conducted as a pretext for denying the claim, was conducted with an "outcome oriented" approach, or an expert's report was not objectively prepared. *See, e.g., Nicolau*, 951 S.W.2d at 458; *Simmons*, 963 S.W.2d at 44-45.

Although the issue whether an insurer acted in bad faith, or the reasonableness of the insurer's conduct, is usually a question of fact for the jury, a court may determine as a matter of law that undisputed record evidence establishes an insurer had a reasonable basis for denying or delaying a claim payment. *See Alvarez v. State Farm Lloyds*, No. SA-18-CV-01191, 2020 WL 1033657, at *4 & n.2 (W.D. Tex. Mar. 2, 2020). If the insurer satisfies this summary judgment burden, the burden shifts to the insured, and a court then must determine whether the "insured failed to present evidence sufficient to support a bad faith claim. *See id*.

a. **Keller's Objections to State Farm's Summary Judgment Evidence**

Keller objects to State Farm's evidence of a Declaration of Kristi Carmichael, contending it is not made based upon Carmichael's personal knowledge and states the statements made are

only based upon her "review of files and records maintained by State Farm." Keller fails to delineate any specific statements that are not based upon Carmichael's personal knowledge or give reason why she would not have such knowledge. Keller argues, generally, the declaration should be stricken because it is not based upon Carmichael's personal knowledge of the matters discussed.

This objection is overruled.

Carmichael's declaration attests:

> The information contained herein is based on my personal knowledge and/or mymy review of files and records maintained by State Farm in the ordinary course of business. . . . I am familiar with the claim that is the basis of this case and with the policy issues to Macklin D. Keller by State Farm. I was a Claim Team Manager on this case. I am authorized to make the statements in this Declaration. . . . As a result of my position, I have personal knowledge of the files and records maintained by State Farm relating to the claim submitted by Macklin D. Keller (the named insured on Policy No. 90-CN-Z958-4). My personal knowledge from my involvement with the claim of Mr. Keller and the files and records maintained by State Farm in the ordinary course of business form the basis of this Declaration.

*ECF No. 22, Exh A*. Without specific designation of statements outside Carmichael's attested personal knowledge or the basis of objection, this Court finds this attestation of personal knowledge sufficient to satisfy the requirement of Federal Rule of Civil Procedure 56(a).

Keller also objects to Carmichael's declaration because it is based upon hearsay. This objection is overruled because Keller fails to designate the objectionable statements, but instead, makes a general statement that Carmichael's declaration contains hearsay. This Court will not ascertain any objectionable statements.

**b. State Farm's Summary Judgment Burden of Proof**

In this Motion for Summary Judgment, State Farm must present undisputed record evidence that establishes, as a matter of law, it had a reasonable basis for denying or delaying payment on Keller's coverage claim.

State Farm contends the undisputed evidence shows this case involves an honest dispute as to the extent of damage to Keller's property caused by the subject hailstorm and the scope of the work necessary to rectify this damage. Specifically, State Farm contends its adjuster, Dan Matamoros, and its expert, Alan Berryhill disagree with Keller's public adjuster, Curtis Rodgers regarding the extent of damage caused by the hailstorm; State Farm's adjuster, Matamoros and its expert, Bryan Hash[3], disagree with Rodgers and Keller's Roofing Contractor, DC Restoration, on the issue whether the entire roof needs to be replaced, rather than a portion; and State Farm's engineer, Susan Parniani, and Plaintiff's engineer disagree as to what tiles were damaged by the hailstorm.

State Farm presents summary judgment evidence through the affidavit of Kristi Carmichael and pertinent records contained within the case file. *ECF No. 22, Exhs. A to A-13*. State Farm's summary judgment evidence reveals undisputed facts pertaining to the procedural history of Keller's insurance claim and the actions and discussions of the parties during State Farm's investigation and determination of liability. This undisputed factual evidence reveals the following.

Keller reported damage from the hailstorm to State Farm's representative Dannie Sims on May 29, 2020, stating the home sustained damage to the concrete roof tiles as well as the roof "valley areas." *ECF No. 22-1, Exh. A, par. 5*. Keller reported the damage created water leaks and

---

[3] This Court will not review or analyze the expert reports of Berryhill and Hash. These expert reports were prepared during the course of this litigation and not for the purpose of or at the time of State Farm's investigation of Keller's insurance claim. Therefore, these reports are not relevant to the Court's focus here of the reasonability of State Farm's investigation and determination based upon the facts and circumstances before it at that time.

consequent damage to the interior. Id. Keller stated he hired a contractor, Bondoc Roofing, to make remedial roof repair to the "valley areas". *Id*. Sims received an estimate from Keller's roofing contractor, DC Restoration, for the roof repair in the amount of $46,893.25 to replace the entire roof. *Id. at par. 7*.

Sims noted in the case file he spoke with Lance Lemoine with DC Restoration, who advised him that foot traffic from previous repairs, and the fact that the roof was installed incorrectly, created more roof damage than the reported hail damage. *Id*. Lemoine advised Sims that based upon the poor installation and attempts to repair damage created by this shortfall, and damage created by foot traffic of these previous repairs, the entire roof needed to be replaced. *Id*.

State Farm's inspector, John Michael Taylor, inspected the roof on June 19, 2020. *Id. at par. 8*. Taylor noted his inspection revealed hail damage to the non-concrete, laminate roofing materials covering the porch area, and damage to some concrete tiles caused by previous potential foot traffic to make previous roof repairs. *Id*. Taylor also reported the water damage on the interior and provided a field estimate for repair of this interior damage. *Id*. On June 29, 2020, Sims reviewed Mr. Taylor's estimate, revised it, and forwarded it for review by management to issue payment for covered roof repairs (the damaged tiles from accessing the valley repairs), emergency roof repairs (the Bondoc work to repair the roof valley) and the interior water mitigation. *Id. at par. 9*.

On the same day, Sims spoke with Keller and explained to him the pending estimate for the roof repairs which were related to the subject hailstorm, but also explained the inspections from Boldoc and Taylor revealed the roof had been installed incorrectly, and the policy did not cover loss from construction defects. *Id*. Sims and Keller also discussed the need for further

inspection of the roof and the interior to determine the extent and source of damage. *Id. at pars. 9,10*.

Given Covid safety protocol, Sims conducted a virtual inspection with Keller's on-site contractor DC Restoration, and based upon this virtual inspection, noted the interior damage to drywall, insulation, base, shoe mold, and laminate flooring in two bedrooms and a closet. *Id. at par. 12*. Sims further noted damage to the laminate porch roof appeared to be from multiple storms due to rot, deterioration, and delamination. *Id*. Sims uploaded his photographs of the interior and revised the draft estimate, and shortly thereafter, left his employment with State Farm. *Id*.

Dan Matamoros was assigned to the file on July 17, 2020, at which time he noted a prior insurance claim on the same property which showed "overlap on repairs not being completed" and "hail damage needs to be verified." *Id. at par. 13*. Upon review, Matamoros determined a 2014 prior claim resulted in State Farm denying coverage for damage to the roof and interior because the cost of repair did not rise above the deductible. *Id*. On August 5, 2020, Matamoros met with Keller's independent adjuster, Logan Rodger, and performed a reinspection of the roof. *Id*. Matamoros spoke with the tenant and confirmed the reported interior water damage occurred on the reported date of the hailstorm. *Id*. Upon reinspection, Mr. Matamoros found wear and tear damage and many damaged tiles from foot traffic and determined further review was needed to ascertain whether there was hail damage related to the subject storm. *Id*.

Kristi Carmichael reviewed Matamoros's report and determined a need to retain an engineer to ascertain whether there was any wind or hail damage to the tile roofing, sunroom, and patio roofing materials related to the subject hailstorm. *Id. at par. 15*. Carmichael approved a reservation of rights letter mailed to Keller and his adjuster, Rodger, explaining the need for

inspection by an engineer. Shortly thereafter, Matamoros received an estimate for total roof replacement from Rodger of $72,601.00. *Id. at pars. 15-18*.

On September 3, 2020, Engineer Susan Parniani inspected the property, and completed a report on September 17, 2020. *Id. at par. 18*. Parniani's Report advised: (1) The reported damage to the concrete tiles did not occur as a result of the subject storm. However, several concretes tiles could have been displaced by the storm. A contributing factor to the displacement of these tiles was improper installation and deterioration of the fascia board; (2) the home had cosmetic dents to the metal roof vents from historic events; however, they were all cosmetic and did not compromise the integrity of the components; (3) the location and widespread patten of the cracked, chipped, and displaced concrete tiles resulted from age-related deterioration, thermal expansion, quality of installation, and previous foot traffic and maintenance activity; (4) the non-storm related damaged tiles could be repaired or replaced as in the past; and (5) the location, pattern, and severity of the rotted plywood roof deck indicated the reported water intrusion occurred over time, prior to the reported storm event, and the damage and rotting resulted from rainwater bypassing the roofing membrane through pre-existing holes and penetrations. *ECF No. 22-1, Exh. A-10, pp. 5-6*.

On October 6, 2020, State Farm issued a partial denial letter and estimate to Keller and Rodger. *Id. at Exh. A, par. 19; Exhs. A-11 to A-12*. This letter explained that, as stated in Parniani's report, there was some covered damage that occurred as a result of the subject storm; however, the cost to repair and replace the damage was less than the applicable deductible, and therefore, no payment would be made. State Farm also explained that there were a number of laminate shingles damaged by reasons not covered by the policy. *Id*. Matamoros then closed the file.

    c. **Discussion**

State Farm relies upon these undisputed facts and the procedural investigation of Keller's claim to establish a reasonable basis for delay and eventual denial of payment.

First, upon review of the undisputed chronological history of Keller's insurance claim and the documented indications from investigation by representatives of both parties that the roof damage might be caused by something other than the hailstorm, the Court concludes the undisputed facts reveal State Farm conducted a reasonable and objective investigation to determine the extent and cause of damage.

The undisputed case file records reveal State Farm promptly responded to Keller's claim by sending its inspector and by working with Keller's contractor to inspect the roof and determine the extent and cause of damage to the roof. Based upon its inspector's and Keller's contractor's opinions, State Farm had reasonable basis to continue its review and inspection of the property to determine the source of damage. State Farm timely hired an engineer, who concluded the damage to the roof and interior was not caused by the subject hailstorm. Based upon these reliable sources, State Farm concluded the damage to the roof was not covered by the policy, and accordingly denied the claim. This undisputed record evidence reveals State Farm promptly and objectively investigated Keller's claim before denying it. *See Alvarez v. State Farm Lloyds*, 2020 WL 1033657, at *4; *see also Giles*, 950 S.W.2d at 56, n.5.

With this undisputed record evidence, State Farm adequately shows the basis of this action results from the parties' bona fide coverage dispute. This undisputed history and investigation reveal State Farm satisfies its summary judgment burden of proof to show it had a reasonable basis to delay payment of Keller's claim and ultimately denied payment of the claim upon confirmation of a reasonable basis showing no liability. *See id*. Therefore, the undisputed facts reveal a bona fide coverage dispute which does not rise to liability for a bad faith cause of action.

With this showing, State Farm satisfies its summary judgment burden. The burden shifts to Keller to present summary judgment evidence to raise a genuine dispute whether State Farm's liability for the insurance claim was reasonably clear or its investigation was conducted as a pretext for denying the claim or with an "outcome oriented" approach. *See Nicolau*, 951 S.W.2d at 458; *Simmons*, 963 S.W.2d at 45.

Keller presents no evidence to dispute the facts that establish State Farm's efforts to determine the cause of the roof and interior damage. Keller presents the case file and notes, which substantiate State Farm's showing of a bona fide coverage dispute. In his affidavit, Keller attests only to the undisputed and general facts supporting this action: a hailstorm occurred; shortly after, his tenant complained of interior leaks and damage; he hired Bondoc to complete remedial roof repairs; State Farm denied coverage for full roof replacement; he never received any estimate for repair or coverage from Matamoros, and; eventually State Farm denied coverage for roof and interior damage. *ECF No. 23-3*. Keller attests further that due to this damage, he was required to pay for repairs, and his tenant broke the lease. *Id*. Keller does not argue or present evidence to show State Farm's inspector's report, Sim's and Matamoros's conclusions and estimate, or Engineer Parniani's report were not objectively prepared or were prepared with an outcome-oriented approach.

This evidence demonstrates only that Keller disagreed with State Farm's conclusions and consequent denial of liability. The fact that Keller incurred personal expense or disagreed with State Farm's conclusions, alone, is not sufficient to raise a genuine dispute whether State Farm acted in bad faith, or violated its duty of good faith and fair dealing. For this reason, the evidence presented by Keller does not satisfy his burden to raise a genuine dispute whether State Farm acted with bad faith in denying his insurance claim. *See Alvarez*, 2020 WL 1033657, at *4.

For these reasons, the Court concludes the undisputed evidence reveals that at the time it reviewed, investigated, and ultimately denied Keller's insurance claim, State Farm had a reasonable basis for denying or delaying payment on Keller's claim as a matter of law due to the reports and indication of prior damage that was not covered under the insurance policy.

**2. Violation of § 541 of the Texas Insurance Code (Unfair practices) and Breach of Good Faith and Fair Dealing**

Causes of action that share the same predicate for recovery as a bad faith claim include violation of § 541 of the Texas Insurance Code based upon unfair insurance practices and violation of the Deceptive Trade Practices Act. *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002); *Alvarez*, 2020 WL 1033657, at *3. Therefore, if a court finds as a matter of law that an insurer held a reasonable basis for denial of an insurance claim, a cause of action asserting unfair practices in violation of §541 of the Texas Insurance Code and a cause of action for violation of the DTPA are precluded as a matter of law. *Higginbotham*, 103 F.3d at 460; *Watson v. State Farm Lloyds*, 56 F. Supp.2d 734, 736 (N.D. Tex. 1999). That is, "an insured may not prevail on claims under article 21.21 of the Texas Insurance Code or the DTPA if the court concludes that the insured has no cause of action for breach of the duty of good faith and fair dealing." *Higginbotham*, 103 F.3d at 460; *Watson*, 56 F. Supp.2d at 736; *Giles*, 950 S.W.2d at 49.

As discussed, this Court concluded as a matter of law, State Farm held a reasonable basis for delay and denial of Keller's insurance claim. Consequently, Keller's causes of action asserting unfair practices in violation of §541 of the Texas Insurance Code and cause of action for violation of the Texas DTPA are precluded as a matter of law. *Higginbotham*, 103 F.3d at 460; *Watson*, 56 F. Supp.2d at 736. Summary judgment is granted on these causes of action.

**Conclusion**

For the reasons stated, the Court **GRANTS** Defendant State Farm Lloyds' Motion for Partial Summary Judgment as it pertains to Keller's causes of action of violation of its duty of good faith and fair dealing, violation of 541 of the Texas Insurance Code based upon unfair insurance practices, and violation of the Texas DTPA. Accordingly, these causes of action are dismissed. Keller's causes of action of breach of contract and violation of the Texas Prompt Payment Act shall proceed.

It is so ORDERED.
SIGNED this 31st day of October, 2022.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE