UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MACKLIN KELLER,

   *Plaintiff*,

v.                                       **Case No.  SA-21-CV-00205-JKP**

STATE FARM LLOYDS,

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Macklin Keller's Motion for Attorney Fees and the parties' responsive briefings. *See* ECF Nos. 65, 66, 67, 70, 73, 74. After due consideration of the parties' briefings, arguments, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Keller's motion. The Court awards Keller $38,027.64 in damages for his breach of contract claim, $18,276.08 in damages under the Texas Prompt Payment of Claims Act, $11,507.16 in pre-judgment interest, such sums as may be appropriate in post-judgment interest, $39,803.76 in attorney fees, and $4,140.63 in costs.

## BACKGROUND

On December 7, 2023 the jury returned a verdict finding State Farm breached the parties' insurance contract and awarding Keller $45,758.64 in damages. *See* ECF No. 59. Keller brings the instant motion seeking $532,186.89 in attorney fees, $4,140.63 in costs, statutory damages under the Texas Prompt Payment of Claims Act, and pre- and post-judgment interest. *See* ECF No. 65. State Farm responds arguing (1) the Court should apply the $7,731.00 policy deductible

to the jury award; (2) Plaintiff's counsel's $550 an hour rate is not reasonable; (3) the Court

should reduce the attorney fee award sought by 30.9 hours for time spent on unsuccessful claims;

(4) the Court should reduce the attorney fee award sought by 23 hours for administrative or

duplicative entries; (5) the Court should refrain from increasing the lodestar amount; and (6) the

Court must reduce the attorney fee award under § 542A.007 of the Texas Insurance Code. *See*

ECF No. 66. The Court considers each of these arguments, in turn, below.

## DISCUSSION

### I.        Breach of Contract Damages

The parties agree the jury award should be reduced by $7,731.00 for the policy

deductible. *See* ECF No. 67 at 10. The Court, therefore, reduces the breach of contract damages

to $38,027.64.

### II.       Prompt Payment of Claims Act Damages

Chapter 542 of the Texas Insurance Code requires an insurer to follow certain procedures

and meet certain deadlines when it receives, accepts, rejects, or pays an insurance claim. The

statute's purpose is to require insurers to promptly pay claims made by their insureds. *See* Tex.

Ins. Code § 542.054. Courts are required to construe the statute liberally to promote this purpose.

*Id*. The elements of a cause of action for a violation of chapter 542 are the following: (1) the

plaintiff had a claim under an insurance policy; (2) the plaintiff gave proper notice of its claim to

the insurer; (3) the insurer is liable for the claim; and (4) the insurer violated chapter 542 by not

timely: (a) acknowledging, investigating, or requesting information about the claim, (b)

accepting rejecting, or extending the deadline for deciding the claim, or (c) paying the claim.

Tex. Ins. Code §§ 542.051, 542.055, 542.056, 542.057, 542.060. The parties do not dispute

Keller had a claim under the insurance policy and gave proper notice of his claim to State Farm,

satisfying elements (1) and (2). The jury's finding that State Farm breached the parties' contract by failing to pay to repair Keller's roof satisfies elements (3) and (4)(c), because the jury found State Farm is liable for a claim it did not pay. Therefore, State Farm is liable for violating chapter 542.

In an action for violation of chapter 542, the insurer is liable to pay simple interest on the amount of the claim as damages. Tex. Ins. Code § 542.060(c). Simple interest is calculated by applying the formula $P \; x \; R \; x \; T = I$, in which $P$ is the principal (or the amount of the claim), $R$ is the rate of interest, $T$ is the time period, and $I$ is the interest awarded. *Texas Farmers Ins. v. Cameron*, 24 S.W.3d 386, 400 n.5 (Tex.App.—Dallas 2000, pet. denied). In this case, the $P$ value, or principal value, is the value of Keller's breach of contract claim, or $38,027.64. The $R$ value, or the rate of interest, is calculated by adding 5 percent to the judgment interest rate set by the Texas Consumer Credit Commissioner, which is currently 8.5 percent, for a total of 13.5 percent. Tex. Ins. Code § 542.060(c); Tex. Fin. Code § 304.003; Texas Credit Letter (December 20, 2023). The $T$ value, or time period, starts accruing on the date the claim was required to be paid, which is 60 days after the insurer has all the information it needs to process the claim. Tex. Ins. Code §§ 542.058, 542.060(c), 542A.001(2). The jury determined this date to be July 3, 2020. Therefore, interest began to accrue 60 days after July 3, 2020—on September 1, 2020. Statutory damages stop accruing on the date of the trial court's judgment. *State Farm Life Ins. v. Martinez*, 174 S.W.3d 772, 790 (Tex.App.—Waco 2005). This order is accompanied by a final judgment order dated March 28, 2024, so that is the date upon which damages stop accruing. The number of years between September 1, 2020 and March 28, 2024 is approximately 3.56 years.

Applying the formula *P x R x T = I*, \$38,027.64 x 0.135 x 3.56 = \$18,276.08. Therefore, the Court finds Keller is entitled to \$18,276.08 in damages under § 542.060(c) of the Texas Insurance Code.

### III.    Pre-Judgment and Post-Judgment Interest

Keller also seeks pre-judgment and post-judgment interest. Pre-judgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *International Turbine Services, Inc. v. VASP Brazilian Airlines,* 278 F.3d 494, 499 (5th Cir.2002) (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 528 (Tex.1998)). The Texas Supreme Court has recognized two separate bases for the award of pre-judgment interest: (1) an enabling statute; and (2) general principles of equity. *Id.* (citing *Johnson & Higgins,* 962 S.W.2d at 530). In Texas, statutory pre-judgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases. *Id.* (citing Tex. Fin. Code §§ 304.102, 304.201). *See also Johnson & Higgins*, 962 S.W.2d at 530. Because Keller's breach of contract claim does not fall within the statutory provisions, the pre-judgment interest award is governed by Texas common law. *Id.* (citing *Johnson & Higgins*, 962 S.W.2d at 520, and *Adams v. H & H Meat Products, Inc.*, 41 S.W.3d 762, 780 (Tex.App.—Corpus Christi, 2001, no pet.)). Texas common law allows pre-judgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract. *Id.* (citing *Johnson & Higgins*, 962 S.W.2d at 532). The current rate of post-judgment interest is 8.5 percent per annum, simple interest. *Id.* (citing Tex. Fin. Code § 304.003).

4

The Court applies the same simple interest formula—$P \times R \times T = I$—to calculate pre-judgment interest. In this case, $38,027.64 x 0.085 x 3.56 = $11,507.16. Therefore, the Court finds Keller is entitled to $11,507.16 in pre-judgment interest on his breach of contract claim under Texas common law. The Court also awards Keller such sums as may be appropriate in post-judgment interest under 28 U.S.C. § 1961(a).

## IV.   Attorney Fees

Keller is entitled to attorney fees under Tex. Ins. Code § 542A.007. To determine what attorney fees are due, courts first "calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999). After that, federal courts determine whether to adjust the lodestar amount "upward or downward, depending on the circumstances of the case and after addressing the *Johnson* factors." *Id*. Texas courts apply the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997). Federal courts sitting in diversity jurisdiction may apply either one because the *Arthur Andersen* factors are substantially similar to the *Johnson* factors. *See Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000). The burden is on the party seeking attorney fees to demonstrate the amount sought, including any adjustment or enhancement. *Jackson v. Host Int'l, Inc.*, 426 Fed. App'x. 215, 226 (5th Cir. 2011). An award of attorney fees is entrusted to the "sound discretion" of the Court. *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990).

### A.  Lodestar Analysis

Determining the lodestar amount requires two steps: first, determining the "compensable hours listed in the attorneys' time records," and, second, determining "an appropriate hourly rate

based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). To determine if fees are reasonable, the court may look to affidavits and utilize the judge's own experience as a lawyer and judge. *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980). Courts determine the appropriate hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Fee applicants shoulder the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. In general, applicants establish "the reasonable hourly rate for a particular community … through other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

In this case, Keller provides a spreadsheet showing counsel worked 317.6 hours from October 2020 to the date of filing his motion for attorney fees. *See* ECF No. 65-1. State Farm argues the Court should reduce the attorney fee award sought by 30.9 hours for time spent on unsuccessful claims. *See* ECF No. 66. In cases which include recoverable and unrecoverable claims, "a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). Further, "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. In this case, Keller agrees the fee award should be reduced for time spent working on State Farm's successful motion for summary judgment. *See* ECF No. 67 at 2. The Court, therefore, reduces the award by 30.9 hours for time spent on unsuccessful claims.

State Farm further argues the Court should reduce the attorney fee award sought by 23 hours for administrative or duplicative entries. *See* ECF No. 66. Plaintiff's counsel agrees the March 10, 2022 and March 28, 2022 hours logged for Brian Hash's deposition are duplicative. *See* ECF No. 67. The Court, therefore, reduces the award by 4.5 hours logged on March 28, 2022. Plaintiff's counsel further agrees the 1.1 hours logged on March 22, 2022 are for administrative tasks not properly characterized as attorney work. *See* ECF No. 67. The Court, therefore, reduces the award by 1.1 hours. Plaintiff's counsel disagrees with State Farm's characterization of the hours expended on Brian Hash's deposition as excessive, explaining those hours include time spent preparing for the deposition as well as the deposition itself. The Court agrees deposition preparation is compensable attorney work and declines to reduce the award for those hours. Plaintiff's counsel further argues, and the Court agrees, time spent working on post-trial motions is compensable. Courts include time spent preparing a request for attorney fees into the fee award. *See e.g. One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, 2015 WL 5098552 at *34 (S.D. Tex. Aug. 31, 2015). The Court, therefore, reduces the billable hours by 30.9 hours for time spent on unsuccessful claims, 4.5 hours for duplicative entries, and 1.1 hours for administrative tasks. The total compensable hours are 281.1 hours.

Next, the Court assesses the appropriate hourly rate. Plaintiff's counsel, who is a solo practitioner and managing partner of her own firm, says her current hourly rate is $550 an hour. *See* ECF No. 65, 65-1. State Farm argues $550 an hour is not a reasonable rate. *See* ECF No. 66. Specifically, State Farm asks the Court to strike Plaintiff's counsel's affidavit offered in support of her hourly rate as self-serving and unsupported by any factual basis. The Court declines to strike counsel's affidavit. Providing an affidavit in support of an attorney fee request is standard practice and though inconclusive, it provides some evidence of the appropriate rate. *See Mesa*

*Petroleum Co. v. Coniglio*, 629 F.2d at 1030. State Farm further asks the Court to apply its reasoning in a different insurance case to apply a rate of $285 an hour. *See Winston v. State Farm Lloyds*, No. SA-20-CV-00515-JKP, 2022 WL 3327770 *5 (W.D. Tex. Aug. 11, 2022). Plaintiff's counsel argues the hourly rate in the *Winston* case should not be applied here because the attorney who tried that case was an associate attorney, not a partner. The Court agrees and declines to extend its reasoning in *Winston* to this case. Plaintiff's counsel offers little evidence, other than her own affidavit, for why $550 an hour is an appropriate rate. Indeed, in the November 10, 2020 demand letter, Plaintiff's counsel indicated her hourly rate was $300 an hour. Plaintiff's counsel now argues her hourly rate has increased since she first took the case, but does not provide evidence showing why the $250 increase in her rate from 2020 to 2024 is justified. The Court, therefore, determines $300 an hour to be a reasonable rate in this case. Multiplying the $300 hourly rate by 281.1 compensable hours, the lodestar amount is $84,330.00.

### B.  Upward or Downward Adjustment

Although the lodestar amount is presumptively reasonable, courts also consider whether an upward or downward adjustment is warranted. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). As explained above, as a federal court sitting in diversity jurisdiction, the Court may apply either the *Johnson* factors or the *Arthur Andersen* factors in determining whether adjustment of the lodestar is appropriate. The *Johnson* factors include:

(1) The time and labor required for litigation;

(2) The novelty and complexity of the issues;

(3) The skill required to properly litigate the issues;

(4) Whether the attorneys had to refuse other work to litigate the case;

(5) The attorneys' customary fee;

(6) Whether the fee was fixed or contingent;

(7) Whether the client or case circumstances imposed any time constraints;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) Whether the case was undesirable;

(11) The type of attorney-client relationship and whether the relationship was longstanding;

(12) Awards made in similar cases.

*Dickey's Barbecue Pit, Inc. v. Neighbors*, 4:14-cv-484, 2016 WL 3653517, at *2 (E.D. Tex. Jan. 9, 2016). The *Arthur Andersen* factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the expertise, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d at 818 (Tex.1997). The lodestar may not be adjusted due to a factor, however, "if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).

In this case, Keller focuses on the risk counsel took on by taking the case and counsel's contingency fee agreement as bases for requesting a three-factor upward adjustment to the lodestar amount. State Farm argues the risk involved in taking this case on contingency does not provide grounds to enhance the base lodestar because this arrangement is the standard business model for Plaintiff's counsel. Indeed, the Court agrees taking cases on a contingency fee basis is standard practice for Plaintiff's attorneys in insurance cases, and nothing about this case is particularly novel or complex to warrant an upward adjustment. The Court, therefore, declines to vary from the lodestar amount based on the *Johnson* and *Arthur Andersen* factors.

### C. Effect of Demand Letter

Texas Ins. Code § 542A.007 requires the Court to adjust the attorney fee award based on any differences between the claimant's pre-suit demand letter and the final judgment award. Specifically, the Court must divide the judgment award by the pre-suit demand letter amount, then multiply that number by the Court-determined lodestar amount to determine the final attorney fees owed. *See* § 542A.007(a)(3)(A), (B). If the judgment is 20 percent or less than the pre-suit demand, the claimant is not entitled to attorney fees. *See* § 542A.007(c). If the judgment is 80 percent or more than the pre-suit demand, the claimant is entitled to the full amount of attorney fees. *See* § 542A.007(b)(1). In this case, the November 10, 2020 demand letter claimed State Farm owed $80,563.15. As discussed above, the final judgment amount is the jury verdict amount, minus the deductible, or $38,027.64. Dividing $38,027.64 by $80,563.15 is 0.472, or

47.2 percent. Multiplying 0.472 by the Court-determined lodestar amount of $84,330.00 equals $39,803.76. Therefore, $39,803.76 is the final lodestar amount in this case.

Keller offers several reasons why the Court should not apply § 542A.007 to reduce the lodestar amount, all of which are unavailing. As an initial matter, the Court notes § 542A.007, which was enacted in 2017, is a relatively new statute and the caselaw interpreting it is sparse. Both parties briefed a Texas Supreme Court advisory opinion interpreting the statute which was published after the motion for attorney fees was filed in this case. *See Rodriguez v. Safeco Ins. Co.*, No. 23-0534, ---S.W.3d---, 2024 WL 388142 (Tex. 2024). The question before the *Rodriguez* court was different from the case at bar—namely, the court was considering the effect of an insurer's payment of the appraised amount on availability of attorney fees. *Id*. This case deals with a judgment award that is less than the amount in the demand letter. That said, the *Rodriguez* court's reasoning applies in the instant case.

The *Rodriguez* court indicates that in applying § 542A.007, courts "need not and should not seek the answer from any source other than the statute's plain language." *Rodriguez v. Safeco Ins. Co.*, 2024 WL 388142 at *2. The court goes on to note that the legislature's "voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Id*. (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). The *Rodriguez* court goes on to say that "[a]lthough the mathematical calculation described by section 542A.007(a)(3) is somewhat detailed, it is not unclear or ambiguous." *Id*. The *Rodriguez* court then encourages courts to apply the mathematical calculation as written, which is what the Court has done in this case.

Keller encourages the Court to diverge from the plain text of the statute to consider the reason why Keller's position changed in the time that passed between issuance of the pre-suit demand letter and final judgment. Specifically, Keller explains that when the pre-suit demand letter was sent, he was seeking repair of his damaged tile roof; however, when State Farm refused to pay for the repair, Keller was forced, under the terms of the parties' agreement, to mitigate his damages by fixing his own roof. Keller could not afford to repair the tile roof, so he chose to replace it with a shingle roof, which is cheaper. Keller argues State Farm should not benefit from Keller's reduced damage model through the Court's application of § 542A.007. But the statute does not contemplate the type of exception Keller describes. The plain language of § 542A.007 instructs courts to reduce the attorney fee amount by the percentage difference between the demand letter and judgment amounts, without consideration of why those amounts are different. The Court, therefore, declines to diverge from the statute's plain text based on Keller's argument about the reason why his damage model changed.

Keller further argues the Court should refrain from applying a § 542A.007 reduction to the attorney fee award because the "judgment" amount contemplated by the statute includes both the damages owed under the parties' contract and interest. In this case, adding Keller's damages award on his breach of contract claim to the amount owed in interest would amount to more than 80 percent of the demand letter, making § 542A.007 inapplicable. Keller suggests the Texas Supreme Court in *Rodriguez* signaled its intent to include interest in its interpretation of the judgment amount under § 542A.007 by referencing several times the fact that the insurer had paid the appraised amount plus interest. The problem with that argument is the *Rodriguez* court did not explicitly say what effect, if any, the insurer's payment of interest had on the court's application of § 542A.007. Furthermore, the plain text of the statute forecloses Keller's

12

argument. Section 542A.007(a)(3)(A) instructs courts to divide "the amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy for damage to or loss of covered property" by the amount in the pre-suit demand letter. *See* § 542A.007(a)(3)(A). The term "claim" is defined under § 542A.001 as follows:

> (2) "Claim" means a first-party claim that:
>   (A) is made by an insured under an insurance policy providing coverage for real property or improvements to real property;
>   (B) must be paid by the insurer directly to the insured; and
>   (C) arises from damage to or loss of covered property caused, wholly or partly, by forces of nature, including an earthquake or earth tremor, a wildfire, a flood, a tornado, lightning, a hurricane, hail, wind, a snowstorm, or a rainstorm.

Tex. Ins. Code § 542A.001. In this case, the amount awarded to Keller under Keller's claim under the insurance policy for damage to the covered property is $38,027.64. Nothing in the statute suggests interest should be factored into this calculation. Indeed, though the caselaw is sparse, the federal cases cited by the parties applying § 542A.007 do not include interest in the judgment amount. *See Smith W. Tex. v. Allied Prop. & Cas. Ins. Co.*, 555 F. Supp. 3d 342 (W.D. Tex. Aug. 18, 2021);[1] *Yin Investments USA, LP v. Aspen Specialty Ins. Co.*, No. 6:20-cv-00153, 2022 WL 2528244 (N.D. Tex. July 7, 2022). The Court, therefore, declines to add Keller's interest award to the judgment amount of the purposes of applying § 542A.007.

Keller requests, in the alternative, if the Court applies a § 542A.007 reduction in attorney fees, the Court should apply an upward adjustment to the lodestar amount because the case is "undesirable" under the tenth *Johnson* factor. In so arguing, Keller invites the Court to apply *Johnson* to reverse the effect of § 542A.007, which would frustrate the statute's purpose. In keeping with the Texas Supreme Court's guidance in *Rodriguez*, the legislature's "voted-on

---

[1] Keller suggests the *Smith W. Tex.* holding finding "judgment" under § 542A.007 means the full judgment amount should be interpreted by this Court to mean interest is included in the term "judgment." The question in *Smith W. Tex.*, however, was whether the judgment amount on multiple properties should be considered individually or as a whole, not whether interest should be included. *See Smith W. Tex.*, 555 F. Supp. 3d 342.

language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, the judge's inquiry is at an end." *Rodriguez v. Safeco Ins. Co.*, 2024 WL 388142 at *2 (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (internal quotations excluded). The Court, therefore, declines to apply *Johnson* to adjust the lodestar amount after applying § 542A.007. The final lodestar amount is $39,803.76.

## V.       Costs

Keller seeks $4,140.63 in filing fees and deposition costs. "The district court has broad discretion in taxing costs, and the [the Fifth Circuit] will reverse only upon a clear showing of abuse of discretion." *Migis v. Pearle Visison, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998). Under Federal Rule of Civil Procedure 54(d)(1), costs "should be allowed to the prevailing party," with some exceptions. Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920. In this case, Keller incurred $4,140.63 in filing fees and deposition costs, which the Court taxes against State Farm as reasonably incurred for this case.

## CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** and **DENIES IN PART** Keller's motion. The Court awards Keller $38,027.64 in damages for his breach of contract claim, $18,276.08 in damages under the Texas Prompt Payment of Claims Act, $11,507.16 in pre-judgment interest, such sums as may be appropriate in post-judgment interest, $39,803.76 in attorney fees, and $4,140.63 in costs. Final judgment will be entered by separate order.

It is so ORDERED.
SIGNED this 28th day of March, 2024.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE